AO 91 (Rev. 11/11)  Criminal Complaint

**FILED**

MAY − 8 2020

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
        DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

| | |
|---|---|
| United States of America<br>v.<br>Jennifer Loya<br><br>Defendant(s) | Case No. 5:20-MJ-647 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____ in the county of ____Bexar____ in the ____Western____ District of ____Texas____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| United States Code Title 21 Section 846 | Conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine |
| 18 U.S.C. 1503(a) | Obstruction of Justice |
| 18 USC 371 | Conspiracy to Obstruct Justice |

This criminal complaint is based on these facts:

See attached sheet.

☑ Continued on the attached sheet.

_____
Complainant's signature

Jacob Detern, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 05/08/2020

_____
Judge's signature

City and state: San Antonio, Texas

Henry J. Bemporad, U.S. Magistrate Judge
Printed name and title

I, Jacob Dezern, Special Agent with the Federal Bureau of Investigation (FBI), San Antonio, Texas, being duly sworn, depose and state as follows:

1. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code (U.S.C.), Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrest for offenses enumerated in Title 18, United States Code, Section 2516.

2. I am currently a Special Agent with the FBI, United States Department of Justice. I have been employed with the FBI since 2010. As such I have participated in numerous criminal investigations involving drug trafficking, public corruption, and other criminal matters. I have conducted and participated in physical and electronic surveillance, debriefings of informants and reviews of taped conversations and records pertaining to drug trafficking and public corruption. Through my training, education and experience, I have become familiar with the manner in which criminal acts of drug trafficking and public corruption are committed. Many of these crimes involve the use of email or other forms of electronic communication. I am also familiar with the efforts of persons involved in such activities to avoid detection by law enforcement, including the use of vague or coded language during their conversations related to illegal activities.

3. The Drug Enforcement Administration (DEA) began investigating Israel FERNANDEZ-Vasquez in late 2018, when CS-18-158941, hereafter "CS," who had been incarcerated with FERNANDEZ-Vasquez, stated FERNANDEZ-Vasquez is a leader of a sophisticated drug trafficking operation based in Monterrey, Nuevo Leon, Mexico with a complex network of coordinators, distributors, and clients. According to the CS, FERNANDEZ-

Vasquez is a member of the Cartel de Noreste (CDN). FERNANDEZ-Vasquez was deported from the U.S. in May 2018, but his DTO still operates in San Antonio, Texas. The CS indicated that FERNANDEZ-Vasquez oversees the transportation and distribution of large quantities of cocaine, heroin, and methamphetamine into the U.S., specifically into the San Antonio area.

4. The CS has been in contact with FERNANDEZ-Vasquez since October 2018. The CS was able to contact FERNANDEZ-Vasquez and negotiate the purchase of one pound of methamphetamine from an associate of FERNANDEZ-Vasquez based in San Antonio, later identified as Roland GUSTAMANTE. The CS was shown a photographic lineup, and he positively identified GUSTAMANTE as the person he knows as "ROLO."

5. On April 17, 2020, agents interviewed a cooperating defendant, hereafter referred to as CD#1, regarding Roland GUSTAMANTE and his associates. CD#1 stated that GUSTAMANTE was in charge of supplying CD#1 with illegal narcotics from Mexico and coordinating the smuggling and transportation of illegal narcotics from Mexico into the United States. CD#1 stated that GUSTAMANTE had a residence in Monterrey, Mexico that he would utilize while conducting business in Mexico. Agents asked how the illegal narcotics would get smuggled/transported from Mexico to San Antonio. CD#1 stated the illegal narcotics loads would come in pickup trucks driven my various individuals within the GUSTAMANTE DTO. CD#1 stated the narcotics would be concealed in the tires, transmissions, and oil pans. Agents then asked if the illegal narcotics loads would come directly to CD#1 or if he/she had to pick them up. CD#1 informed agents that in the beginning, the narcotics would cross from Mexico into Laredo, Texas, and then he/she would send some of his/her associates from San Antonio to Laredo to pick up the illegal narcotics load. CD#1 stated he/she would use random people to make these trips, and he/she would pay those individuals one thousand dollars per trip. CD#1

stated once the narcotics load arrived in San Antonio, he/she would direct the vehicle to Roland GUSTAMANTE's sister's residence in San Antonio, where the illegal narcotics would be off-loaded inside the garage and then taken to the stash house used by CD#1. Roland GUSTAMANTE's sister is Alexandra GUSTAMANTE. CD#1 further stated that they used Alexandra GUSTAMANTE's residence on multiple occasions to unload the illegal narcotics, which they coordinated with Alexandra GUSTAMANTE.

6. CD#1 stated that GUSTAMANTE's wife, who CD#1 identified as Kimberly LOYA on a photo lineup, was used by the GUSTAMANTE DTO as the person who was in charge of collecting/transporting/smuggling the bulk currency into Mexico to pay for the illegal narcotics loads being distributed by the GUSTAMANTE DTO. CD#1 further stated that Kimberly LOYA would drive a white Mitsubishi to collect/transport/smuggle the narcotics proceeds from San Antonio to Mexico. The white Mitsubishi is registered to Jennifer LOYA, Kimberly LOYA's sister. However, Kimberley LOYA and GUSTAMANTE are the primary users of the white Mitsubishi. According to border crossing history of the white Mitsubishi from May 2019 to January 2020, that vehicle has travelled into Mexico approximately twenty-one times. Out of the twenty-one trips, Kimberly LOYA has been an occupant of the white Mitsubishi in all of them. On June 18, 2019, CD#1 was also an occupant on the white Mitsubishi. According to CD#1, the reason he/she went to Mexico was to meet with GUSTAMANTE's sources of supply, identified as Ismael FERNADEZ-Vasquez and Israel FERNADEZ-Vasquez. CD#1 again stated that Kimberly LOYA routinely smuggled bulk currency resulting from illegal narcotics distributed by the GUSTAMANTE DTO in San Antonio. CD#1 also stated that Kimberly LOYA would sometimes pick up different amounts of illegal narcotics throughout San Antonio and deliver the narcotics to various associates of

GUSTAMANTE in San Antonio. CD#1 stated that Kimberley LOYA would do all this under GUSTAMANTE's instructions.

7. Jennifer LOYA, Kimberly's sister, is employed as a Paralegal Specialist in the United States Attorney's Office for the Western District of Texas, San Antonio Division. Jennifer LOYA initially started working for the U.S. Attorney's Office as a legal assistant beginning March 1, 2017, and was promoted to Paralegal Specialist in February of 2020. Through her position at the U.S. Attorney's Office, Jennifer LOYA has had access to electronic surveillance records, Title III applications, pen registers, tolls analysis, tracking warrants, and other law enforcement sensitive information belonging to various federal law enforcement agencies. As a result, she is in a position to understand the intricacies of electronic surveillance by law enforcement. Jennifer LOYA is suspected of disclosing sensitive law enforcement information pertaining to active DEA investigations to members of Drug Trafficking Organizations (DTO).

8. Throughout the course of various drug trafficking investigations, DEA Agents identified multiple DTOs operating in San Antonio that were loosely tied to each other. DEA Agents identified the Frankie MARTINEZ DTO, and the Jonathan CHAPA DTO. While investigating each DTO, Agents learned that Jonathan CHAPA and Adam MCGARITY, a member of the MARTINEZ DTO, were childhood friends. Agents also learned that CHAPA would provide the MARTINEZ DTO with narcotics supplied by Roland GUSTAMANTE. GUSTAMANTE has been identified as a cousin of CHAPA, and an associate of MCGARITY.

9. In May 2019, the DEA Texas Anti-Gang Unit (TAG) arrested Frankie MARTINEZ, the leader of the MARTINEZ DTO. During MARTINEZ's arrest, MARTINEZ informed the case agent that he knew the case agent was specifically coming to arrest him.

During the execution of the search warrants, agents found that multiple targets of the MARTINEZ DTO had moved during the night and little narcotics were found during the searches. Based on the investigation, DEA had been confident these locations would contain narcotics and narcotics proceeds.

10. In February 2020, MCGARITY, a member of the MARTINEZ DTO, proffered with case agents regarding his involvement in the MARTINEZ DTO. During this proffer, MCGARITY informed agents that a few days prior to his arrest, a female known only as "MARIA," came to his residence and informed him that she had observed official law enforcement documents that named MCGARITY and other members of the MARTINEZ DTO as targets of a DEA investigation. She did not explain how she had obtained access to these sensitive law enforcement documents.

11. During the course of the DEA's investigation of the CHAPA DTO and other close affiliates of that organization, various individuals close to the CHAPA DTO had informed DEA agents and task force officers that someone within that DTO had a source who was providing law enforcement investigative information to the DTO. During an interview of Nathan LOPEZ on March 12, 2020, LOPEZ informed DEA agents that a person known to him as "PRIMO" (later identified by the DEA to be Roland GUSTAMANTE), knew someone working for the United States government who provides "PRIMO" with information pertaining to federal investigations. LOPEZ knew "PRIMO" had informed members of the DTO that they had been indicted by a federal grand jury and that an associate of the DTO was cooperating with agents by providing information about the DTO.

12. On March 26, 2020, DEA executed a Western District of Texas federal search warrant for cellular phones recovered during the arrest of Jonathan CHAPA, leader of the CHAPA DTO. While reviewing one of the phones, agents located a text message thread on March 2, 2020, which was two days before DEA presented their case on the CHAPA DTO to the federal grand jury. The following text thread was exchanged between CHAPA and his cousin and drug trafficking co-conspirator, Roland GUSTAMANTE:

GUSTAMANTE: ADAM up and it ain't looking like it's like a fair game

GUSTAMANTE: I might not be around cuzz

GUSTAMANTE: Games on and you in the hot seat.

CHAPA: Adam?????

CHAPA: Laws??????

GUSTAMANTE: Yesssir if you understand do your thing Cuz dont waist time

GUSTAMANTE: I got good kite on that.

GUSTAMANTE: Big Boy

GUSTAMANTE: To

GUSTAMANTE: And shorty

GUSTAMANTE: Real shit I've already paused the mas arriba don't take me lightly

GUSTAMANTE: Need the church leftovers out the kitchen and in the cooler

13.     Based on the training, experience, and knowledge of other SAs and Task Force Officers (TFOs) involved in this investigation, in the above exchange, GUSTAMANTE informed CHAPA that Adam McGARITY, another drug trafficking conspirator identified by the DEA, has proffered and "snitched" on CHAPA ("ADAM up and it ain't looking like it's like a fair game"). GUSTAMANTE informed CHAPA that he will be leaving town and the police will be coming after CHAPA ("I might not be around cuzz ... Games on and you in the hot seat"). GUSTAMANTE informed CHAPA he has good, reliable information that law enforcement is coming ("I got good kite on that") and that law enforcement is coming after CHAPA, Sergio ("Big Boy") NARVAEZ, and Roger ("shorty") DIAZ. GUSTAMANTE informed CHAPA not to take what he is saying lightly ("real shit I've already paused the mas arriba don't take me lightly") and to move his narcotics and get out of town ("Need the church left overs out the kitchen and in the cooler").

14.     On March 27, 2020, DEA TFOs interviewed Cooperating Defendant Three (CD#3), a member of the CHAPA DTO. During the interview, CD#3 informed the officers that GUSTAMANTE assists the CHAPA DTO in securing narcotics from Mexico and also assists in the coordinating the transportation of the narcotics from Mexico to the United States. CD#3 stated GUSTAMANTE'S wife, Kimberly LOYA, has a sister who works for the United States government as a paralegal assistant. CD#3 did not know this individual's name but knows the individual works as a paralegal and assists with DEA narcotics investigations. CD#3 stated the individual knows law enforcement sensitive information pertaining to individual cases and provides the information to GUSTAMANTE. CD#3 stated GUSTAMANTE informed CD#3 that CD#3 had been indicted and that law enforcement would be coming to arrest him/her soon. CD#3 stated Kimberly LOYA's sister has been providing information to members of the DTO

for an extended period of time and stated prior investigations had been compromised as a result of Kimberly's sister's providing the information. CD#3 stated he/she was told that GUSTAMANTE received the leaked information by telephone, but was not sure if the source of the information telephonically contacted GUSTAMANTE directly or passed the information to GUSTAMANTE through her sister, Kimberly. DEA TFOs confirmed Kimberly LOYA's sister is Jennifer LOYA.

15. On April 15, 2020, Jonathan CHAPA's aunt, Jennifer CHAPA, contacted DEA TFOs and stated that prior to Jonathan CHAPA's arrest, Jonathan CHAPA bragged about the DTO having someone on the inside of the government who was providing information to the DTO. Jennifer CHAPA stated Jonathan CHAPA informed her that his cousin, Roland GUSTAMANTE, had a contact who worked as a legal assistant and had access to DEA case information.

16. During the course of their investigation, DEA Agents obtained toll records that included cellular telephone contacts on (210) 371-3125, a phone belonging to Jennifer LOYA, for dates including April 20, 2020, and April 28, 2020.

17. On April 20, 2020, a pen register application for a cellular telephone belonging to Nathan LOPEZ (210-954-8955) was processed by Jennifer LOYA as part of her normal office duties. LOPEZ is a drug trafficking associate of CHAPA and GUSTAMANTE. Jennifer LOYA's normal office duties include processing electronic surveillance requests for multiple Assistant U.S. Attorneys in the San Antonio U.S. Attorney's Office. This includes wire taps, pen register applications, tracking warrants, and the like. The pen register application regarding

LOPEZ originated from an Assistant United States Attorney in the San Antonio office ("AUSA1").

18. A Department of Justice Office of Inspector General (OIG) investigation revealed that on April 20, 2020, Jennifer LOYA printed document "PEN 210-954-8955 LOPEZ.pdf." This was the pen register application related to LOPEZ that AUSA1 had submitted to the court through LOYA. Pursuant to normal practice in that office, Jennifer LOYA had no reason to print the document due to e-filing protocols. The electronic surveillance documents that Jennifer LOYA handles are normally passed electronically from the AUSA, through Jennifer LOYA, to the court. Printing them is unnecessary.

19. A few days after she printed the LOPEZ pen application, LOYA accessed investigatory files related to LOPEZ and others. OIG remotely captured Jennifer LOYA's computer activity for April 28, 2020, while she was at work at the United States Attorney's Office in San Antonio. The computer activity revealed access to a shared digital folder entitled, "AUSA1/investigations/CHAPA.Jonathan/reports." Within that folder, Jennifer LOYA's computer accessed a folder named "Cooperating Witnesses and Defendants." Jennifer LOYA is not assigned to AUSA1 as his/her legal assistant and therefore has no legitimate reason to access investigatory files related to those cases.

20. On April 28, 2020, at approximately 4:39 PM (CST) and again at 4:42 PM (CST), Jennifer LOYA received incoming telephonic contact from a cellular telephone known to be used by Kimberly LOYA. At about 5:30 PM (CST), Jennifer LOYA's computer accessed an unredacted DEA Form-6 report of a voluntary debriefing by Nathan LOPEZ. In this report, LOPEZ, who was not in custody at the time, reported on drug trafficking activities within the

CHAPA DTO, and specifically mentioned that a United States government employee had passed information to GUSTAMANTE regarding future prosecutorial activities against members of the CHAPA DTO. Later on this date, at approximately 8:35 PM (CST), Jennifer LOYA's cellular telephone (210) 371-3125 was contacted by Kimberly LOYA's cellular telephone. This was followed by approximately six outgoing contacts from Jennifer LOYA to Kimberly LOYA.

21. On May 7, 2020, Kimberly LOYA was interviewed by law enforcement. Kimberly LOYA informed the interviewing agents that sometime between March 4, 2020, and March 10, 2020, Jennifer LOYA informed Kimberly LOYA that Jonathan CHAPA had been indicted and was about to be arrested and to not be around Jonathan CHAPA and to be careful. Jennifer LOYA further informed Kimberly LOYA that Jennifer LOYA had come across a document at work that GUSTAMANTE was under investigation for being involved with a Mexican DTO.

22. Based on the above facts, I believe there is probable cause to conclude that Jennifer LOYA engaged in conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of Title 21, U.S.C., 846; obstruction of justice in violation of Title 18, U.S.C., Section 1503(a), and conspiracy to obstruct justice in violation of Title 18, U.S.C., Section 371.

Respectfully submitted,

Jacob Dezern
Special Agent
FBI

Subscribed and sworn to before me
on May 8, 2020:

UNITED STATES MAGISTRATE JUDGE